Joseph MORRIS et al.,
Plaintiffs-Appellees,

v.

Anthony P. TRAVISONO et al.,
Defendants-Appellants.

No. 75–1043.

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1975.

Decided Jan. 22, 1976.

Ronald Dwight, Sp. Asst. Atty. Gen., with whom Julius C. Michaelson, Atty. Gen., was on brief for appellants.

Ralph J. Gonnella, Providence, R. I., with whom Hodosh, Spinella, Hodosh & Angelone, Providence, R. I., was on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a jury verdict in favor of plaintiffs-appellees, awarding nominal compensatory damages[1] against three of the named defendants and punitive damages[2] against two of them. The action was brought under 42 U.S.C. § 1983 (1970), alleging deprivation of constitutional rights under color of state

---

[1]. Each of the plaintiffs-appellees was awarded $1.00 in damages against one or more of the defendants-appellants. Several of the original defendants were dismissed by the district court, and one was exonerated by the jury.

[2]. The jury awarded plaintiff Gregory Isom $5,000 in punitive damages against Frederick Chiarini, Deputy Warden at the Adult Correctional Institution, Cranston, Rhode Island, and it awarded plaintiff Charles Perry $500 in punitive damages against Harold Yahn, a correctional officer at the Institution.

law. Specifically, plaintiffs alleged that they were subjected to cruel and unusual punishment by the defendants in violation of the eighth amendment.[3] Essentially the allegations of cruel and unusual punishment were based on several incidents involving the use of tear gas against prisoners by correctional officers at the Medium Security Unit of the Adult Correctional Institution. Although the exact circumstances are disputed, it is uncontested that tear gas was used on the plaintiffs-appellees. The basic question was whether the use of tear gas to punish nonthreatening prisoners constituted cruel and unusual punishment and thereby exposed the defendants to liability under § 1983. In this regard the defendants contend on appeal that the district court committed error in the following portion of its charge to the jury:

3. In addition to their prayer for damages, plaintiffs also seek injunctive and declaratory relief. Those matters are still pending in the district court and are not now before us. At this time we need only decide whether an award of damages is justified under the circumstances of this case.

4. What constitutes cruel and unusual punishment is not easy to define with precision. *Wilkerson v. Utah,* 99 U.S. 130, 135–36, 25 L.Ed. 345 (1878). It is certainly not a static concept. *Trop v. Dulles,* 356 U.S. 86, 100–01, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (opinion of Warren, C. J.). *See generally O'Brien v. Moriarty,* 489 F.2d 941, 944 (1st Cir. 1974); *Anderson v. Nosser,* 438 F.2d 183, 190–91 (5th Cir. 1971), *modified en banc,* 456 F.2d 835 (1972). It does seem clear, however, that in the context of § 1983 liability, "not all tortious conduct subject to liability under state law constitutes 'cruel and unusual punishment' under the Federal Constitution." *Howell v. Cataldi,* 464 F.2d 272, 277 (3d Cir. 1972).

5. In the absence of subjective bad faith, a party is liable for damages under § 1983 only when he has violated the clearly established constitutional rights of a plaintiff. In the recent case of *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court, in the course of its discussion of the limited immunity of public school officials in § 1983 damage suits, said:

"... The official must himself be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified

"[I]f you find that the plaintiffs were gassed while locked in their cells and at the time of the gassing posed no substantial and immediate physical threat to themselves, other prisoners or to the security of the institution or to the correctional officers but rather the plaintiffs were gassed *for the mere purpose of punishing them,* then you must find for the plaintiffs." (emphasis supplied)

■■■ This phrase from the charge is open to attack as lowering the threshold of cruel and unusual punishment[4] to a level that cannot be said to represent a well-settled principle of constitutional law.[5] Specifically, it could be argued that the italicized words of the charge directed the jury to apply to the facts of this case a harsher legal standard than that established by precedent.[6]

by ignorance or disregard of *settled, indisputable law* on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. ... [A] school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the *basic, unquestioned constitutional rights* of his charges. ... A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's *clearly established constitutional rights* that his action cannot reasonably be characterized as being in good faith." 420 U.S. 321–22, 95 S.Ct. 1000–1001 (emphasis supplied).

*Wood v. Strickland's* discussion of immunity and § 1983 was limited to "the specific context of school discipline," *id.* at 322, 95 S.Ct. at 1001, but the language concerning unquestioned and clearly established constitutional rights appears to represent a more general principle. *See O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Gumanis v. Donaldson,* 422 U.S. 1052, 95 S.Ct. 2673, 45 L.Ed.2d 705 (1975). *See also Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975); *Glasson v. City of Louisville,* 518 F.2d 899, 907–08 (6th Cir. 1975).

6. There is substantial disagreement among the courts which have considered the use of tear gas in the prison setting. Several federal courts have granted injunctive relief against

We do not reach, however, the serious questions of substantive law involved here because of a procedural problem of considerable magnitude, viz. the failure of defendants to object clearly and specifically to the district court's instructions before the jury retired to consider its verdict, as required by Fed.R.Civ.P. 51.[7]

 Rule 51 is of considerable importance for the orderly and just functioning of the judicial system, see *Marshall v. Nugent*, 222 F.2d 604, 615 (1st Cir. 1955); see also *Dunn v. St. Louis-San Francisco Railway Co.*, 370 F.2d 681 (10th Cir. 1966) (Aldrich, J.), and we ordinarily do not entertain appeals from instructions to which objection was not made in accordance with the rule. We retain the power to do so, however, and we will exercise that power, albeit reluctantly, when the ends of justice would thereby be best served. "Where there is plain error we may notice such error of our own volition. This rule should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir. 1966). See also *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Cohen v. Franchard Corp.*, 478 F.2d 115, 124 (2d Cir.), cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973). The plain error exception to Rule 51 by no means demands that "every alleged error, even on a significant aspect of a case, requires reversal despite failure to comply with Rule 51." *Cohen v. Franchard Corp*, supra at 124. While we have acknowledged the

existence of the plain error exception, see, e. g., *Nimrod v. Sylvester*, supra at 873; *Giacalone v. Raytheon Mfg. Co.*, 222 F.2d 249, 251–52 (1st Cir. 1955), it is noteworthy that to the best of our knowledge this court has never reversed a civil case on this basis. We reaffirm *Nimrod's* acknowledgment of the existence of a plain error exception, but we also endorse the view of Professors Wright and Miller to the effect that "If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." 9 C. Wright & A. Miller, Federal Practice & Procedure § 2558, at 675 (1971). See also *Cohen v. Franchard Corp.*, supra at 125. We have very carefully studied the record in this case, and we conclude that the plain error exception should not be invoked here. The alleged error concerns only a part of the charge; the district court gave both parties an opportunity to object to the charge; and the defendants were represented by the Attorney General's office. Thus we do not believe that a sufficient case has been made out here for us to make an exception to Rule 51.

We are well aware that this case involves the complex and combustible area of prison control and discipline, see *Palmigiano v. Baxter*, 487 F.2d 1280, 1283 (1st Cir. 1973), vacated and remanded, 418 U.S. 908, 94 S.Ct. 3200, 41 L.Ed.2d 1155, on reconsideration, 510 F.2d 534 (1974), cert. granted, 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678 (1975), but we cannot overlook basic procedural rules

---

the use of tear gas to punish or control the nonthreatening inmate. See, e. g., *Battle v. Anderson*, 376 F.Supp. 402 (E.D.Okl.1974); *Morales v. Turman*, 364 F.Supp. 166, 173–74 (E.D.Tex.1973); *Landman v. Royster*, 333 F.Supp. 621, 649 (E.D.Va.1971). On the other hand, other federal courts have declined to disapprove the use of tear gas by prison officials even in nonthreatening situations. See, e. g., *Brown v. United States*, 342 F.Supp. 987, 994 (E.D.Ark.1972), modified, 486 F.2d 284 (8th Cir. 1973); *Bethea v. Crouse*, 417 F.2d 504, 509 (10th Cir. 1969). See also *Landman v.*

*Peyton*, 370 F.2d 135, 138 (4th Cir. 1966), cert. denied, 388 U.S. 920, 87 S.Ct. 2142, 18 L.Ed.2d 1367 (1967).

7. Rule 51 reads in relevant part:
 ". . . No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

because of the identity of the parties or because of a possibly hostile relationship between the parties which transcends the immediate dispute.

■ Defendants also argue that there was an insufficient evidentiary basis for finding liability on the part of the supervisory personnel, Warden Mullen and Acting Director Taylor. We have examined the evidence and the court's charge on this point, and we find sufficient evidence to support a finding of liability. In addition, we find no prejudicial error by the court in its evidentiary rulings.

*Accordingly, the judgment of the district court is affirmed.*