United States Court of Appeals
For the First Circuit

No. 98-1886

KEVIN P. BEATTY AND CYNTHIA L. BEATTY,

Plaintiffs, Appellants,

v.

MICHAEL BUSINESS MACHINES CORP.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Selya and Stahl, Circuit Judges,
and Shadur,* Senior District Judge.

J. Michael Conley with whom Conley Haley & Champion was on
brief for appellant.
Tracy D. Hill, with whom Harold J. Friedman and Friedman
Babcock & Gaythwaite, were on brief for appellee.

April 20, 1999


* Of the Northern District of Illinois, sitting by designation. STAHL, Circuit Judge. Plaintiffs-appellants Kevin and
Cynthia Beatty appeal judgments entered following jury verdicts in
favor of defendants-appellees Michael Business Machines ("MBM") and
Ideal-Werk. Plaintiffs appeal only the verdict in favor of MBM,
challenging the district court's jury instructions and aspects of
the special verdict forms. Because plaintiffs failed to preserve
their appellate issues and no plain error appears in the record, we
affirm.
I.
In 1984, Kevin Beatty's employer, the Casco Northern Bank
(the "Bank"), purchased a model 4104 Ideal-Werk "Destroy-It" paper
shredder (the "shredder") from MBM, the sole distributor of Ideal-
Werk shredders in the United States. The Bank made several
modifications to the shredder over the next few years, including
removal of the conveyor belt that funneled paper into the blade,
replacement of the 4104 blade with a blade from a different model
shredder (a 4104A shredder), installation of a toggle switch,
removal of the screws holding the shredder's cover in place, and
attachment of a handle to the now-unattached cover. 
Independent service technician Ned Boxer made some of the
modifications, including the installation of the 4104A blade and
the removal of the conveyor belt. Boxer testified that he called
MBM when the 4104 blade was beyond repair, and that an MBM employee
told him that 4104 blades were no longer being manufactured. Thus,
he had to replace the 4104 blade with a 4104A blade, which was not
designed to work with the conveyer belt. MBM denies giving this
advice and notes that the 4104 blades were never discontinued. 
In any event, the lack of a conveyer belt to funnel paper
into the blade caused the shredder to jam frequently. Because of
the repetitive jams, an unknown Bank employee removed the screws
holding the protective cover on the machine and attached a handle
made of rubber bands and paper clips to the cover. This
modification allowed employees to remove the cover more easily to
clear the jams. Boxer told various Bank employees that the cover's
removal was dangerous and replaced the screws each time he serviced
the machine, but the employees continued to remove them. 
On April 12, 1993, Kevin Beatty was using the shredder to
shred documents at the Bank. When the shredder jammed, without
stopping the machine, Beatty removed the top cover and then reached
across to hit the stop button. As he did this, his right hand
became stuck in the shredder, causing him to sustain serious
injuries.
Kevin Beatty sued defendants for strict liability,
negligence, breach of implied warranty of merchantability, and
breach of implied warranty for a particular purpose. Cynthia
Beatty sued defendants for loss of consortium. After plaintiffs
presented their case, defendants moved for judgment as a matter of
law pursuant to Fed. R. Civ. P. 50. In support of their motions,
defendants argued, inter alia, that the substantial modifications
to the shredder by Boxer and Bank employees constituted efficient,
intervening causes of Kevin Beatty's injuries that insulated them
from liability. The district court decided to hold its decisions
on the motions until the completion of defendants' presentation. 
After defendants rested, the district court granted the motion as
to Kevin Beatty's claim that Ideal-Werk had breached an implied
warranty of fitness for a particular purpose. The court also
granted the motions as to Kevin Beatty's claim for intentional
infliction of emotional distress. The remaining claims went to the
jury, though the court warned plaintiffs that their case was not a
good one. 
The night before closing arguments, the parties
conferenced in chambers to discuss the jury instructions and the
proposed special verdict forms. There is no record of this
conference, and the parties disagree to some extent as to what
actually occurred. Defendants argue that the court was undecided
as to whether it would give an efficient, intervening cause
instruction with respect to the claims against MBM, while
plaintiffs assert that the court told them it was very unlikely
that it would so instruct. Whatever was said, the district court
ultimately decided to instruct the jury regarding efficient,
intervening cause with respect to Kevin Beatty's claims against
both defendants. Plaintiffs maintain that they were given no real
advance notice of this change; defendants say that the court clerk
met them at the door and showed them the intervening cause
instructions.
In any case, while plaintiffs admit that the clerk did
give both parties draft copies of the jury instructions and the
special verdict forms (both of which indicated although the MBM
verdict form was muddled because of the error discussed in the next
paragraph that efficient, intervening cause would also be at
issue in Kevin Beatty's claims against MBM) upon their arrival at
the courthouse, they state that they did not receive any other
notice of the court's change of heart. Plaintiffs further claim
that they had only a moment to review the instructions and verdict
forms prior to closing arguments, and that they thus failed to
appreciate that the court now intended to instruct on efficient,
intervening cause with respect to MBM. 
Further complicating matters, the draft of special
verdict Form 2 provided to plaintiffs before their closing argument
contained an unfortunate typographical error. Question 4 on both
Form 1 (the separate verdict form as to Ideal-Werk) and Form 2 (the
separate verdict form as to MBM) asked whether the conduct of the
Bank, Boxer, or Kevin Beatty constituted an intervening act that
broke the chain of causation, an inquiry that would not belong in
Form 2 at all if the issue of intervening cause were not indeed
relevant to Kevin Beatty's claims against MBM as well as against
Ideal-Werk. But Form 2 mistakenly told the reader to skip Question
4 and go to Question 5 if the reader had answered "yes" to
Questions 1, 2, or 3. Questions 1, 2, and 3 asked, respectively,
whether MBM was negligent in supplying the 4104A blade, whether MBM
had breached the implied warranty of merchantable quality with
regard to that blade, and whether MBM had breached the implied
warranty of reasonable fitness for a particular purpose with regard
to the blade. Plaintiffs claim that they did not read Question 4
because their case against MBM depended on a "yes" answer to
Questions 1, 2, or 3, and because the Form 2 they were given
instructed them to skip to Question 5 if Questions 1, 2, or 3 were
answered "yes." Thus, for this additional reason, plaintiffs
contend that the special verdict form failed to provide them with
notice that the court intended to instruct the jury on efficient,
intervening cause with respect to the claims against MBM.
During closing arguments, defendants discussed all of the
Bank's modifications to the machine. Defendants did not
distinguish between Ideal-Werk and MBM, but referred to both
throughout. Plaintiffs did not object to defendants' closing
arguments and, in rebuttal, argued that the toggle switch was
irrelevant to the accident. Plaintiffs did not address the issue
of intervening cause as to MBM during their closing argument.
After closing arguments, the district court instructed
the jury. The court told the jury that, because of the doctrine of
joint and several liability, both defendants were liable if there
was a defect in the shredder's design. It further instructed that
only MBM could be found liable for the subsequent sale of the 4104A
blade or for breach of the implied warranty of fitness. The court
then explained the concept of efficient, intervening cause to the
jury. Here, the court explicitly referred to the manufacturer and
the distributor. The court switched between referring to "both
defendants" and Ideal-Werk alone, but clearly referred to both MBM
and Ideal-Werk throughout the instructions. Next, the court
discussed the special verdict forms. Form 1 covered the sale of
the shredder in 1984, while Form 2 covered the sale of the
replacement heads, and thus pertained to the claims against MBM
alone. The court read through Form 1 in detail, including Question
4, which was the intervening cause instruction. The court then
reviewed Form 2 in less detail. Yet the court did tell the jury
that the forms were the same but for the first three questions,
which it read aloud. Finally, the court specifically told the jury
to "go to Question 4" if it answered "yes" to Questions 1, 2, or 3
on both forms. As we have observed, the court did not explicitly
point out the typographical error to counsel, see supra note 1, but
it did read the corrected instruction on Form 2 aloud. When asked
for objections to the forms, plaintiffs' counsel not only failed to
object, but also commented that the forms were "excellent." 
During its deliberations, the jury had a question about
efficient, intervening cause. With the parties present, the
district court instructed the jury on the concept again, stating
several times that the efficient, intervening cause doctrine was
applicable to MBM. When the court asked for objections, plaintiffs
again answered that they were satisfied.
After deliberating, the jury returned verdicts for
defendants on both forms. The jury had answered "yes" to the first
three questions on Form 2, i.e., that MBM was negligent, that it
had breached the implied warranty of merchantable quality, and that
it had breached the implied warranty of reasonable fitness. But
the jury also answered "yes" to Question 4, which asked if the
Bank's conduct, Boxer's conduct, or Beatty's conduct constituted an
efficient, intervening act. Because it answered "yes" to Question
4, the jury found that MBM was not liable per its instructions. 
The district court entered judgments for defendants and this appeal
followed.
II.
Plaintiffs contend that the evidence was insufficient to
warrant the introduction of the issue of efficient, intervening
cause into their case against MBM. Plaintiffs further argue that
their failure to object to the portions of the jury instructions
and verdict forms that erroneously discussed the concept should be
forgiven because of the irregularities surrounding the court's
decisionmaking process. We reject the latter argument and decline
to reach the former.
Fed. R. Civ. P. 51 requires a party to object to an
instruction "before the jury retires . . . stating distinctly the
matter objected to and the grounds of the objection." Silence
after jury instructions "typically constitutes a waiver of any
objections" for purposes of appeal. Putnam Resources v. Pateman,
958 F.2d 448, 456 (1st Cir. 1992). Our standard of review thus
differs depending on whether the issue was preserved. "If a party
complies with Rule 51, then the 'harmless error' standard of Rule
61 governs . . . the appellate court's consideration of any request
for relief based on the alleged error." Scarfo v. Cabletron Sys.
Inc., 54 F.3d 931, 939 (1st Cir. 1995). But if a party does not
comply with Rule 51, the issue is not preserved, and we review only
for "plain" error. See Moore v. Murphy, 47 F.3d 8, 11 (1st Cir.
1995). "The object of this rule is to afford the trial judge an
opportunity upon second thought, and before it is too late, to
correct any inadvertent or erroneous failure to charge." Marshallv. Nugent, 222 F.2d 604, 615 (1st Cir. 1955). 
Plaintiffs did not comply with Rule 51 in this case. 
Although plaintiffs argue that they did not have enough notice of
the court's intention to give an efficient, intervening cause
instruction with regard to the case against MBM, the record belies
their claim. Indeed, the record shows that plaintiffs had numerous
occasions to object. The district court advised both parties
during its instructions that the doctrine of efficient, intervening
cause applied to both the manufacturer and the distributor. 
Moreover, the district court reviewed the special verdict forms in
sufficient detail that counsel should have been aware that the
draft special verdict Form 2 distributed just before closing
arguments contained a typographical error. Finally, the court's
response to the jury's question during deliberations made very
clear its view that the doctrine of intervening cause applied to
the claims against MBM. Through it all, plaintiffs remained
silent. Thus, we review only for plain error.
The plain error exception "'should be applied sparingly
and only in exceptional cases or under peculiar circumstances to
prevent a clear miscarriage of justice.'" Wells Real Estate v.
Greater Lowell Bd. of Realtors, 850 F.2d 803, 809 (1st Cir. 1988)
(quoting Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir. 1966)). 
The exception "'should be confined to the exceptional case where
the error has seriously affected the fairness, integrity, or public
reputation of judicial proceedings.'" Morris v. Travisono, 528 F.2d
856, 859 (1st Cir. 1976) (quoting 9 C. Wright & A. Miller, Federal
Practice and Procedure, 2558, at 675 (1971)). This is not such
a case. We have reviewed the record with care, and we are doubtful
that the court's decision to give an intervening cause instruction
with respect to the claims against MBM can be regarded as an abuse
of discretion. See United States v. Smith, 145 F.3d 458, 460 (1st
Cir. 1998)(the decision whether the evidence warrants a particular
instruction is committed to the trial court's discretion). But
even if it can be so regarded, nothing about the putative error
even remotely calls into question the fairness, integrity, or
public reputation of judicial proceedings. Along these lines, we
note that plaintiffs do not argue that the alleged error was
"plain"; they only contend that their failure to object should be
excused.
III.
For the reasons set forth above, we affirm the judgment
below in all respects.
Affirmed. Costs to appellee.