819 F.2d 1142
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Francis BOWLING, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 86-3313.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1987.
 
 Before MARTIN, NELSON and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant Francis Bowling appeals the denial of his application for disability insurance benefits, arguing that there is not substantial evidence on the record to support the Secretary's determination that Bowling was capable of performing a full range of light work. The district court affirmed the Secretary's decision. We find that there is substantial evidence on the record to support the Secretary's decision, and accordingly, we affirm the district court.
 
 
 2
 Bowling was born on December 9, 1934 and was 50 at the time of the ALJ's hearing. He had a seventh grade education and a G.E.D. His past relevant work had been as a truck driver and dock worker. He injured his spine in a trucking accident at work on November 19, 1983. On December 12, 1983, a team of surgeons including Dr. Miller, a neurosurgeon, performed a corpectomy, decompressing Bowling's vertebral canal. A bone graft was performed, his spine was fused and stabilization rods were inserted. He was discharged on December 24, 1983.
 
 
 3
 Bowling was examined by Dr. Miller and Dr. Roberts on February 14, 1984. His convalescence was progressing, but Dr. Roberts stated in a letter on February 24, 1984, that Bowling would not be able to return to work until December 1984. Dr. Miller opined that he "should be considered totally disabled for a period of not less than 18 months from the time of his surgery". Dr. Miller responded to a request for information from the Bureau of Disability Determination on March 12, 1984. She reported weakness in both hip flexors. There was no evidence of muscle atrophy. No x-rays had been made since his hospitalization. She reported that at Bowling's February exam, he was unable to walk on his heels and toes and unable to rise from a squat. Manual muscle testing revealed weakness in both foot flexors, greater on the left than the right.
 
 
 4
 At the Secretary's request, Bowling was examined by consulting orthopedic surgeon Joseph Schlonsky on May 9, 1984. Dr. Schlonsky reported that Bowling could bend at the waist and touch his knees. Lateral bending and extension showed some stiffness. Knee and ankle reflexes were easy to elicit with the left ankle reflex slightly increased. There was some decreased sensation to pin prick in the first web space, but otherwise his lower extremities exhibited normal sensation. Dr. Schlonsky concluded that Bowling was somewhat stiff but had no gross neurological deficit in his lower legs.
 
 
 5
 Reviewing physician Walsh, considering the above evidence, opined that Bowling's condition did not meet the Listings. In a May 1984 residual functional capacity assessment, Walsh reported that Bowling could perform light work at that time and could be expected to have no severe impairment after one year from the date of the surgery.
 
 
 6
 Bowling was re-examined by Dr. Schlonsky on October 24, 1984. X-rays showed that the spinal fusion appeared to be intact and that the position was good. There was no evidence of nerve root compression in the lower extremities. There was numbness below the ankles in both feet, but no weakness of the lower extremities. There was no muscle atrophy, knee and ankle reflexes were normal, and Bowling was able to walk on his heels and toes. Based on this evidence, reviewing physician Hummel noted that the only residual from Bowling's back injury was foot numbness, and opined that there was no severe impairment.
 
 
 7
 Dr. Miller examined Bowling in December 1984 and completed a physical capacities evaluation form on March 25, 1985. She checked boxes indicating that in a normal work day, Bowling would be able to stand for 4 hours, sit for 3 hours, walk for 3 hours, and could lift 11-20 pounds occasionally. She found that his hands could be used for repetitive movements, but that his feet could not. She stated that he could not bend, squat, crawl, or climb at all. She stated that basically he was doing very well, but was concerned that return to his former heavy work as a truck driver would aggravate his problem.
 
 
 8
 At the ALJ's hearing, Bowling testified to pain and numbness, although he had not taken pain medication since October 1984. He does odd jobs around the house, drives a car, truck, and riding mower, and walks to the corner store. He looked for work as a light delivery truck driver, light janitor and landscaper in the past year.
 
 
 9
 The ALJ found that Bowling's orthopedic impairments did not meet or equal the level of severity described in the Listing of Impairments contained in Appendix 1 to Regulations No. 4. The ALJ found that Bowling's impairments were severe because they limited his ability to perform basic work functions, such that he could not perform medium or heavy work. After discussing the reports by Dr. Schlonsky and Dr. Miller, the ALJ concluded that Bowling had retained the residual functional capacity since at least October 1984 to perform light work not requiring frequent body movements. The ALJ found that Bowling's residual functional capacity for light work considered in conjunction with his age, education, and past work experience, invoked Rules 202.14 and 202.21 of Appendix 2 to Regulations No. 4, which directed a finding of "not disabled" since October 1984.
 
 
 10
 Bowling argues that the ALJ erred by disregarding the opinion of his treating physician, Dr. Miller. It is established law in the Sixth Circuit that the evaluation of a treating physician is entitled to greater weight than the evaluation of a consulting doctor. Allen v. Califano, 613 F.2d 139 (6th Cir.1980). However, it is also settled that the ultimate issue of disability is solely for the Secretary to determine, and the ALJ does not have to accept conclusory statements made by treating physicians, but must review the medical findings. Even a treating physician's opinion is not probative if not corroborated by objective medical findings. Houston v. Secretary of H.H.S., 736 F.2d 968 (6th Cir.1984); Kirk v. Secretary of H.H.S., 667 F.2d 524 (6th Cir.1981).
 
 
 11
 The ALJ considered the opinions of treating physicians, Dr. Miller and Dr. Roberts, made shortly after the surgery, that Bowling would be unable to return to work until December 1984 or for 18 months after the December 1983 surgery. He specifically rejected those opinions because they were not borne out by the subsequent medical findings. Dr. Miller's findings as to Bowling's progress in his recovery do not support her earlier opinion as to the length of his disability. The ALJ was entitled to reject that earlier opinion.
 
 
 12
 Bowling next argues that Dr. Miller's medical findings do not support the ALJ's conclusion that he is capable of performing a full range of light work. He argues that he is not capable of performing a full range of light work, and that the ALJ erred in not requiring the testimony of a vocational expert to determine whether there were jobs in the national ecomony which he could perform. Bowling argues that Dr. Miller's residual functional capacity report showed that he was only able to stand for 4 hours, or walk for 3 hours, or sit for 3 hours in a normal working day. He argues that since light work requires the capacity to walk or stand for 6 or 8 hours, SSR 83-10, that he does not have the ability to perform a full range of light work. The ALJ evidently did not find Bowling's reading of the residual functional capacity report to be persuasive. The ALJ assumed that the meaning of the report was that in a normal working day Bowling could walk for 3 hours, stand for 4 hours, and sit for 3 hours. This reading of the report is the only possible interpretation, as Bowling does not suggest that he was bed-ridden for all but 3 or 4 hours daily.
 
 
 13
 Bowling's reliance on Wages v. Secretary of H.H.S., 755 F.2d 495 (6th Cir.1985), to support his argument that a vocational expert should have been employed is misplaced. Wages held that a claimant who had to alternate between sitting and standing as required for her comfort could not perform a full range of sedentary work, as most sedentary work involves sitting for 6 hours out of an eight hour working day. Bowling's situation is not equivalent to the claimant in Wages, as we are not considering his ability to perform a range of sedentary work which involves prolonged periods of sitting, but rather light work which involves standing and walking. He had the ability to stand and walk for a combination of 7 hours out of an eight hour day.
 
 
 14
 After careful consideration of the record, we find that there is substantial evidence to support the ALJ's conclusion that Bowling had the residual functional capacity to perform a full range of light work. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The ALJ's conclusion is supported by the medical findings of Dr. Miller and Dr. Schlonsky with regard to Bowling's progress, and by Bowling's own testimony as to his activities, including his ability to drive a stick shift automobile. This evidence reasonably supports the ALJ's conclusion that Bowling retained the capacity to perform a full range of light work and thus was not disabled. Accordingly, the district court's order is AFFIRMED.