Glinnon NORRIS, Plaintiff,

v.

Jerry DETRICK, Administrator, Corporal Uppenthual,[1] Corporal Cook, Officer Roach, and Lt. Rudloff, Defendants.

Civil Action No. 2:93–CV–169.

United States District Court,
N.D. West Virginia,
Elkins Division.

March 1, 1996.

---

1. The defendant denoted as "Corporal Uppen-thual" is actually James D. Huppenthal.

William C. King, Jr., Pittsburgh, PA, Richard L. Rosenzweig, Pittsburgh, PA, for plaintiff.

Jan L. Fox, Charleston, WV, for defendants.

## MEMORANDUM OPINION

MAXWELL, District Judge.

Plaintiff, a federal prisoner, seeks to pursue his remedies in this Court pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at the Eastern Regional Jail in Martinsburg, West Virginia, in August 1991. The plaintiff alleg-

es that defendants Huppenthal, Cook, and Roach, officials at the Eastern Regional Jail, used excessive force against him by inappropriately spraying him with a chemical gas at the Eastern Regional Jail and that, thereafter, defendants Detrick, Huppenthal, Cook, Roach, and Rudloff were deliberately indifferent to plaintiff's medical needs.

The defendants have filed a dispositive motion, a portion of which contends that the plaintiff has failed to state a cause of action upon which relief can be granted and a portion of which seeks judgment as a matter of law.[2] The Court heard oral argument on the motion via telephone conference call, and the matter is now mature for disposition.[3]

In August 1991, the plaintiff was a federal prisoner at the Eastern Regional Jail pursuant to a contractual agreement between the jail and the federal government. It is uncontested that the plaintiff's physique was imposing and that the jail staff had been warned by the United States Marshal's Office that the plaintiff was skilled in martial arts, that he was a world class kickboxer, and that he had used those skills to injure two correctional officers at another facility. The defendants also urge that, while incarcerated at the Eastern Regional Jail, the plaintiff bragged of his martial arts skills and of injuring correctional officers. The plaintiff has not refuted these charges.

On Friday, August 16, 1991, at 11:00 PM, the plaintiff, who was in the day room, was instructed by a correctional officer to go to his cell to be "locked down" for the night.[4] The plaintiff refused. The correctional officer notified his supervisor, defendant Huppenthal, who called the Chief Correctional Officer, defendant Rudloff, at his home and reported the incident. It was decided that, if the plaintiff refused to return to his cell, he would be subdued with CN gas.

Defendant Rudloff directed defendant Huppenthal to assemble the necessary staff but instructed him to wait for further authorization before proceeding. Defendant Rudloff phoned defendant Detrick, the jail administrator, at his home and received authorization for use of the CN gas. Defendant Rudloff then called defendant Huppenthal at the jail and authorized the use of the CN gas.

At 11:30 PM, defendant Huppenthal and the correctional officer entered the day room and ordered plaintiff to his cell for lockdown. Plaintiff refused. The officers left the day room.

At 11:45 PM, defendant Huppenthal reentered the day room and defendant Cook stood in the doorway with a device known as a Protectojet which administers the CN gas. Defendant Huppenthal ordered plaintiff Norris to his cell. Plaintiff refused and began advancing toward the door. Defendant Cook released the CN gas, engulfing the plaintiff. The plaintiff started to his cell but then charged the officers and initiated a sweeping kicking motion, which was responded to by a second blast of CN gas which caught the plaintiff in the back at close range.

The plaintiff retreated to his cell where he was shackled and handcuffed. He was showered within fifteen minutes of receiving the gas and examined by Nurse Storm, a licensed practical nurse employed in the jail's medical department. Because the burning sensation was not relieved by the first shower, the plaintiff was given an extended 30 minute shower at about 12:35 AM.

According to the plaintiff's medical records, which were thoroughly outlined by Dr. Kellogg, the jail physician, during his June 27, 1995 deposition, the plaintiff's condition progressively worsened throughout the night—his skin reddened and began to blister. The medical records reflect that Nurse Storm attempted to treat the condition, but, as conceded by Dr. Kellogg, Nurse Storm's

2. The motion is supported by a memorandum of law, a detailed Statement of Material Facts, and an appendix of exhibits primarily consisting of portions of numerous depositions.

3. During the telephone conference call, the Court requested copies of the entire transcripts of certain depositions and also requested a copy of Dr.

Kellogg's report dated August 19, 1991. These matters have been received and carefully studied by the Court.

4. Ordinarily, inmates are permitted to stay up later on Friday nights, but the plaintiff's late night privileges had been suspended as a result of a failed cell inspection.

methods were probably not effective for plaintiff's condition.[5]

At 7:30 AM on Saturday, August 17, 1991, Nurse Storm contacted Dr. Rosenberg, who was the doctor on call for the regular jail physician, Dr. Kellogg. The doctor gave orders, by telephone, for Silvadene, a standard antibiotic ointment for burn wounds. As plaintiff's condition worsened, Dr. Rosenberg was once again contacted at 12:30 PM. It was determined that the plaintiff would be transported to the hospital at shift change.

At 2:45 PM (approximately 13 hours after being sprayed with the CN gas), plaintiff was taken to the emergency room at Martinsburg City Hospital. Plaintiff was treated by Dr. Rosenberg. At that time, plaintiff was diagnosed with second-degree burns covering 10% of his body—multiple blisters over his left arm and arm pit, his neck, left upper back, and buttocks area. Plaintiff was treated with morphine, administered intramuscularly, and dead tissue from the blistering areas was removed. Anicef, an antibiotic, was also administered in the emergency room.

The plaintiff was discharged at 5:00 PM, with instructions that Duricef, an antibiotic, be orally administered for the next ten days and that Silvadene be topically applied twice a day and covered with gauze. Jail officials were instructed to contact the hospital if the plaintiff developed a fever or appeared ill.

Plaintiff was monitored throughout the evening. The medical records reflect that he was resting, but occasionally restless. At 9:30 PM, plaintiff apparently went into shock—he was hypotensive and hypothermic. Nurse Storm administered an IV and plaintiff's condition stabilized. However, the number of blisters was steadily increasing, growing, and periodically rupturing. Plaintiff continued to lose body fluids.

Dr. Rosenberg was called at 10:15 AM on Sunday, August 18, 1991. When Dr. Rosenberg returned the call, he authorized initiation of an IV, if possible. Nurse Storm was unable to locate a site and no IV was started. Throughout this time period, Nurse Storm continued to administer anti-anxiety medications rather than pain relievers—except for one dose of Ibuprofin, an anti-inflammatory.

Jail officials contacted Dr. Kellogg, the jail physician, early Monday morning, August 19, 1991. Dr. Kellogg authorized, by telephone, a prescription for morphine, which was administered at 10:15 AM. Dr. Kellogg visited the jail and examined the plaintiff just before 1:00 PM. Dr. Kellogg found that the blisters had spread to 40% of the plaintiff's body. Dr. Kellogg immediately recommended that plaintiff be transferred to a facility with a burn unit.

Jail officials contacted the United States Marshal's Service, and, at 5:50 PM on August 19, 1991, plaintiff left the Eastern Regional Jail to be airlifted to another facility.[6]

There is no dispute that the plaintiff suffered a serious injury resulting from the use of the CN gas and that his condition represented a "serious medical need." The questions that must now be resolved are whether, under the circumstances presented, use of the CN gas violated the Eighth Amendment and whether any of the named defendants were deliberately indifferent to plaintiff's serious medical needs which resulted from the use of the CN gas.

Defendants' motion to dismiss recognizes the unartfully drafted three-count complaint. Defendants characterize count one as alleging a claim against the defendants for conspiring to violate plaintiff's civil rights. Defendants suggest that, since there is no evidence of a conspiracy, the

---

5. Nurse Storm initially treated the burns with Lidocaine, a local anesthesia, which is not effective for burns, and he did not administer a pain reliever or anti-inflammatory. Because the plaintiff was agitated from his pain, Nurse Storm administered Haldol and Librium, anti-anxiety drugs, which would not have relieved the pain from which the plaintiff was suffering. (Kellogg dep. 8–9, 23–28).

6. Apparently, plaintiff was transferred to Leavenworth Federal Penitentiary where he was immediately sent to Kansas University Medical Center. His medical records from Kansas reflect that the progression of the burn injury continued, eventually including his hands and lower extremities. Plaintiff was hospitalized in Kansas from August 20 to September 5, 1991, at which time he was transferred to Springfield, Missouri Medical Facility for Prisoners.

count must be dismissed. Moreover, defendants seek dismissal of count two because, although it states a claim for deliberate indifference to serious medical needs in violation of 42 U.S.C. § 1983, it invokes the Court's jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2680(h).[7] Defendants also urge the dismissal of count three, which alleges that the defendants breached the contract between the Eastern Regional Jail and the United States Bureau of Prisons.

Finally, to the extent that defendants have been sued in their official capacities, defendants seek dismissal pursuant to *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

 Dismissal under Rule 12(b)(6) is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in a light most favorable to plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Allegations, however unartfully pleaded, will not be dismissed unless it is beyond doubt that the plaintiff could prove no set of facts entitling him to relief. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

 Plaintiff has not seriously opposed the motion to dismiss count three, and it is plainly clear that a private cause of action is not available under 18 U.S.C. § 4002. Count Three must, therefore, be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. In addition, *Will v. Michigan* recognized that state officers acting in their official capacities are entitled to immunity from liability under the Eleventh Amendment. Therefore, the defendants are entitled to dismissal of the complaint to the extent that it seeks to impose liability against the defendants in their official capacities.

However, upon careful examination of the allegations set forth in Counts One and Two of the Complaint and the further clarification provided in plaintiff's opposition to the motion to dismiss, the Court cannot say "beyond doubt" that plaintiff has failed to allege a cognizable claim for excessive force and deliberate indifference against the defendants in their individual capacities.[8] As recognized by plaintiff's counsel, the complaint is not well drafted, but, reading it in a light most favorable to plaintiff, the allegations withstand dismissal on the pleadings.

In the alternative, defendants urge that they are entitled to summary judgment on count one, the excessive force claim. Defendants contend that use of the CN gas on the plaintiff was justified under the circumstances.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir.1990).

 However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not signifi-

---

7. Defendants also seek dismissal of the negligence allegations in Count Two.

8. Rule 8(a), Federal Rules of Civil Procedure, merely requires a short and plain statement of facts and legal claims. Although Count One references a conspiracy, it does appear to raise a garden variety excessive force claim.

cantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, and which are genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). The plaintiff is not required to prove that infliction of unnecessary pain was expressly intended. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). As recognized by the United States Supreme Court:

> It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was

unreasonable, and hence unnecessary in the strict sense.
*Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

■ Prison administrators must be accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Such deference extends to "preventive measures intended to reduce the incidence of these [riotous inmates] or any other breaches of prison discipline." *Whitley,* 475 U.S. at 322, 106 S.Ct. at 1085.

■ The circumstances which were facing the defendants on the evening of August 17, 1991, and the actions which the officers took, do not reflect that the defendants wantonly inflicted pain on the plaintiff.[9] Although the plaintiff's refusal to return to his cell did not present a riotous situation, the martial arts skills he possessed rendered a physical confrontation extremely dangerous to the prison staff. Moreover, he was given numerous opportunities to comply with prison staff's orders. Even when the officers entered the day room with the Protectojet, plaintiff did not submit; rather, he charged. At the time of the incident, the prison officials believed that this degree of force was necessary to subdue the plaintiff and force him to return to his cell. Given the actions of the plaintiff after the first blast of CN gas was administered, the officers' judgment appeared to be accurate.

■ Where a prison security measure is undertaken to resolve a disturbance which poses significant risks to the safety of inmates and prison staff, whether the measure taken amounts to cruel and unusual punishment turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

---

9. As previously indicated, the defendants have submitted a detailed Statement of Material Facts supported by numerous depositions. Plaintiff has not submitted an affidavit refuting any of the material facts, that is, that he refused to lock down despite repeated requests, that he verbally threatened officers, that he practiced kickboxing moves while disobeying the order to lock down, that, upon being confronted, he charged the officers, and that he initiated a kickboxing move while being gassed.

the very purpose of causing harm." *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085, *quoting, Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973). Under the totality of the circumstances, the actions of the defendants reflect a good-faith effort to restore prison order and to regain control over an inmate who possessed martial arts skills which could be used to inflict serious bodily injuries on the officers.

■ In the alternative, it is believed that the defendants are entitled to qualified immunity on the excessive force claim. Public officials are free from liability for monetary damages if they can prove that their conduct did not violate clearly established statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *American Civil Liberties Union, Inc. v. Wicomico County,* 999 F.2d 780 (4th Cir.1993). In considering entitlement to the defense of qualified immunity, the Court must make three determinations:

1) Identification of the specific right allegedly violated;

2) Determining whether at the time of the alleged violation the right was clearly established so as to alert a reasonable officer to its constitutional parameters; and

3) Determining whether a reasonable officer could have believed that his conduct was lawful.

*Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

The first and second prongs of the *Pritchett* test present pure questions of law. As stated by the Fourth Circuit, "[i]n determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being chal-

lenged." *Pritchett,* 973 F.2d at 312 (citation omitted).

■ Therefore, the right allegedly violated cannot be evaluated in general terms, such as the right to be free from cruel and unusual punishment. Rather, the Court must determine whether it was "clearly established" in 1991 that prison officials were prohibited from using CN gas on a recalcitrant prisoner. After reviewing the law, the Court cannot conclude that the right was clearly established and cannot conclude that a reasonable officer would have known that the use of the CN gas, under the circumstances presented, was unconstitutional.

■ The use of mace on an unruly or recalcitrant inmate is not per se unconstitutional—even if he is confined to his cell at the time of his disobedience. *Bailey v. Turner,* 736 F.2d 963 (4th Cir.1984). Whether use of the gas is unconstitutional depends on the totality of the circumstances—the provocation, the amount of gas used, and the purposes for which the gas was used. *Bailey,* at 969. This definition does not provide a bright line rule for correctional officers confronted with a recalcitrant prisoner.

■ Nevertheless, the Court can conclude that *Bailey* clearly established that the use of mace or gas can be unconstitutional if used for punitive purposes or used for legitimate purposes in excessive amounts. Given the unchallenged statement of facts and the sworn deposition testimony submitted in this case, short bursts of gas were employed after adequate warning.[10] The second burst of gas was utilized only after the plaintiff charged the officers. The gas was used for a legitimate purpose and a second burst of gas was necessitated by plaintiff's actions. Small amounts of mace or gas can be constitutionally administered if, after adequate warning, a prisoner refuses to move to or from his cell. *Bailey,* at 969, *citing with approval, Spain v.*

10. As previously noted, the plaintiff has not, by affidavit or otherwise, challenged the defendants' sworn testimony that two short bursts of gas were employed. Rather, plaintiff has attached to his responsive brief the report of an expert witness who opines that the plaintiff was sprayed at close range with an "excessive amount" of the CN gas. The expert does not urge that the amount was inconsistent with two short bursts of

CN gas administered at close range by a Protectojet device. He merely speculates that the plaintiff's injuries suggest that an excessive amount of CN gas was sprayed on the plaintiff. To withstand a motion for summary judgment, the nonmoving party must offer evidence that creates fair doubt rather than encourages mere speculation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

*Procunier,* 600 F.2d 189, 195–96 (9th Cir. 1979).

Accordingly, the officers' conduct did not violate a clearly established right. Based upon the information known to the officers at the time of the incident, the officer's conduct was objectively reasonable. Therefore, they are entitled to qualified immunity on the claim of excessive force set forth in Count One of the Complaint.

■ The defendants also argue that they are entitled to summary judgment on Count Two. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Mere malpractice or negligence in diagnosis or treatment does not state a constitutional claim. *Id.* at 105–06, 97 S.Ct. at 291–92.

■ In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990), citing *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). Deliberate indifference may be demonstrated by actual intent or reckless disregard. *Miltier,* 896 F.2d at 851.

■ Applying these well-established principles to Count Two of the Complaint, the named defendants are entitled to judgment as a matter of law on plaintiff's claims that defendants Detrick, Uppenthual, Cook, Roach, and Rudloff showed deliberate indifference to plaintiff's medical needs and that they lacked required medical knowledge. ·

In the initial stages of plaintiff's injury, Nurse Storm made continuous efforts to treat a progressive condition. Although his efforts may not have been effective in treating the plaintiff, he did not deliberately disregard the plaintiff's condition. Nurse Storm consulted twice with the on-call jail physician and arranged for plaintiff's transportation to the emergency room. Because of the progressive nature of the injury, the seriousness of plaintiff's condition was "underestimated" by the emergency room physician. (Kellogg dep. 38).

Once plaintiff returned to the jail, Nurse Storm followed the discharge instructions. Unfortunately, the discharge instructions did not call for a specific pain reliever or anti-inflammatory to be administered. When plaintiff's condition worsened, Nurse Storm was able to stabilize him. Nurse Storm consulted with Dr. Rosenberg once again and followed his instructions.

To the extent that the medical treatment of Nurse Storm or Dr. Rosenberg could be argued to be "grossly incompetent," the named defendants properly relied on the medical judgments of the medical department and Dr. Rosenberg. When plaintiff was examined by Dr. Kellogg, the regular jail physician, he was immediately transferred pursuant to the physician's instructions.

Under the facts of this case, the named defendants were entitled to rely on the medical judgments made by Dr. Rosenberg and Nurse Storm. *Miltier,* 896 F.2d at 854–55. There is no evidence that any of the named defendants failed to promptly provide the plaintiff with needed medical care, interfered with the decisions of the medical department, or tacitly authorized or were indifferent to the medical department's alleged constitutional violations. *Id.* The medical records, which have not been challenged by plaintiff, confirm that plaintiff received prompt and unfettered medical care. Assuming, for purposes of summary judgment, that the medical treatment fell below the standard of care owed plaintiff, the defendants were, nonetheless, entitled to rely on their health care provider's expertise and cannot be liable under § 1983 for any alleged constitutional violations.

Accordingly, the defendants are entitled to judgment as a matter of law on plaintiff's claims under 42 U.S.C. § 1983 for excessive force and deliberate indifference. The Court

will enter an Order awarding judgment as a matter of law for defendants on Counts One and Two, pursuant to Rule 56(c), Federal Rules of Civil Procedure, and dismissing Count Three of the Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.