Tony Curtis MYERS, Plaintiff,

v.

Berry MILBERT, Captain,
et. al., Defendants.

No. CIV. 2:95CV33.

United States District Court,
N.D. West Virginia.

Sept. 12, 2003.

Tony Curtis Myers, Mount Olive, WV, Pro se.

Jeffery D. Taylor, Rose, Padden & Petty, Fairmont, WV, Patricia Kurelac, Moundsville, WV, John L. MacCorkle, MacCorkle, Lavender & Casey, PLLC, Charleston, WV, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR EXPERT WITNESS

MAXWELL, District Judge.

On March 30, 1995, Tony Curtis Myers ["Plaintiff"], a state prisoner, filed a *pro se* complaint seeking monetary damages for violation of his Eighth Amendment rights while incarcerated at the Northern Regional Jail and Correctional Facility ["NRJCF"] in Moundsville, West Virginia.

Plaintiff alleges that the defendants violated his Eighth Amendment rights by inappropriately restraining him for approximately twenty hours on a stretcher following a disturbance at the NRJCF, ignoring his complaints of pain, failing to provide him pain medication while he was restrained, and feeding him "nutra-loaf" for three days.

On January 17, 1995, Plaintiff was placed on a "stokes basket," a metal stretcher, for kicking and beating his cell door. He was kept on the "stokes basket" for approximately twenty hours. Then, about a week later, on January 26, 1995, Plaintiff threw his food tray out of the food hole and used foul language. Due to his actions, Plaintiff was placed on "nutra-

loaf." On January 27, 1995, Plaintiff refused to eat his "nutra-loaf" because it caused burning in his chest and throat and upset his stomach causing him to vomit and causing frequent bowel movements. Plaintiff demanded to see Defendant Milbert and a nurse. When his demand was not met, Plaintiff began kicking his cell door. He also assaulted a correctional officer with a food tray. He then proceeded to kick his cell door until the jail alarm sounded. As a result of Plaintiff's actions, Defendant Milbert ordered that Plaintiff be placed in the "stokes basket" on January 27, 1995. Before being placed in the "stokes basket," Plaintiff advised Defendant Milbert that both his hands and wrists were sore, and that Dr. Wood had prescribed medication for the pain in his wrists and hands. Thus, Defendant Milbert ordered that Plaintiff be examined by medical staff. Defendant Milbert was advised by Defendant Bilich, a nurse,[1] that one of the handcuffs was too tight. So, Defendant Milbert loosed the handcuff. Thereafter, Plaintiff was taken to a holding cell.

During Defendant Milbert's shift, Plaintiff was checked on numerous times. Defendant Milbert left the NRJCF at 3:15 p.m. and Defendant Glasscock took over from 3:00 p.m. to 11:00 p.m. Defendant Kestner also worked the 3–11 shift. Defendant Glasscock and Defendant Kestner examined Plaintiff at approximately 4:00 p.m. and throughout the second shift; they let him go to the bathroom, and offered him nutra-loaf and medications, which he refused. When Defendant Glasscock's shift ended, Defendant Fry was in charge from 11:00 p.m. to 7:00 a.m. Defendant Fry, along with Defendant Schell checked on Plaintiff numerous times throughout the night.[2] The medical chart indicates that Plaintiff was taken to the bathroom several times during the night and that he made no complaints. Plaintiff was released from the "stokes basket" on January 28, 1995, and made no complaints.

On June 9, 2003, Defendants Milbert, Glasscock, and Fry moved for summary judgment because there is no evidence that they violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by placing Plaintiff in a "stokes basket" and by feeding him "nutra loaf." Thereafter, on June 11, 2003, Defendant Kestner moved for summary judgment because she was not deliberately indifferent to Plaintiff's serious medical needs. Because Plaintiff is appearing *pro se,* the Court issued a *Roseboro*[3] notice, informing him of his right to respond to the motions to dismiss and notifying him that his failure to do so might result in entry of an order of dismissal against him. Plaintiff filed a response on June 20, 2003. On July 10, 2003, Defendants Fry, Glasscock and Milbert filed a reply to Plaintiff's Opposition to Motion for Summary Judgment.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) Fed. R.Civ.P.

Motions for summary judgment impose a difficult standard on the moving party;

---

1. By Order entered on August 21, 2002, Defendant Bilich was dismissed from the case.

2. By Order entered on August 21, 2002, Defendant Schell was dismissed from the case.

3. *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975).

for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Plaintiff raises claims that the defendants violated his Eighth Amendment rights through the use of the "stokes basket" and nutra-loaf and the medical care he received. The Eighth Amendment prohibits the use of cruel and unusual punishment, including the "the unnecessary and wanton infliction of pain" through the use of excessive force. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

An excessive force case has two prongs an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdo-ing was objectively 'harmful enough' to establish a constitutional violation." *Norman v. Taylor*, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995)(quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). According to the Fourth Circuit Court of Appeals, "absent the most extraordinary circumstances" an individual who suffers only *de minimis* pain or injuries cannot prevail on an Eighth Amendment excessive force claim. *Norman*, 25 F.3d at 1263. However, if the force used is "repugnant to the conscience of mankind," i.e., "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimis*. *Id.* Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995; *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996).

■ Plaintiff asserts that Defendants Milbert, Glasscock and Fry ignored his complaints of pain and ignored his complaints that the metal handcuffs were causing further pain to his tender wrists. In light of the medical information provided to the Court, it appears Plaintiff sustained *de minimis* injuries. "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler v. Waters*, 989 F.2d 1375,1381 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). Even if Plaintiff's condition were considered more than *de minimis*, he has failed to meet the subjective component of an excessive force claim.

■ Defendant Milbert did not act maliciously and sadistically by ordering that

Plaintiff be placed in a "stokes basket" nor did Defendants Milbert, Glasscock and Fry act maliciously and sadistically by keeping Plaintiff in the "stokes basket." Plaintiff had assaulted a correctional officer, kicked a door, and basically was "out of control." Thus, the defendants' use of the "stokes basket" was justified. Further, the length of time he was in the "stokes basket" was reasonable in order for Plaintiff to calm down. After ordering Plaintiff's placement in the "stokes basket," Defendant Milbert ordered that the handcuffs be loosened. While Plaintiff was in the "stokes basket," he was given numerous bathroom breaks, and he was given medications, food and liquids. Further, the fact Plaintiff complained of pain in his wrists and hands prior to being placed in the "stokes basket" on January 26, 1995, does not demonstrate that the defendants violated his constitutional rights. Consequently, the evidence does not reveal that the defendants' use of the "stokes basket" was cruel and unusual punishment.

Additionally, "[d]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim regarding medical care, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

█ With regard to claims of inadequate medical attention, the objective component is met when a Plaintiff has a serious medical condition. A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); *Finley v. Trent*, 955 F.Supp. 642, 646 (N.D.W.Va.1997).[4] A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. *Monmouth* 834 F.2d at 347.

█ The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. *Wilson*, 501 U.S.

---

**4.** The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. *Webb v. Prison Health Services*, 1997 WL 298403 (D.Kan.1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y.1999). Conversely, a broken jaw is a serious medical condition. *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101 (4th Cir.1995); a detached retina is a serious medical condition. *Browning v.* *Snead*, 886 F.Supp. 547 (S.D.W.Va.1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. *Finley v. Trent*, 955 F.Supp. 642 (N.D.W.Va.1997). And, excruciating pain and difficulty walking caused by a plate in the right ankle for which an orthopedist recommends surgery is a serious medical condition. *Clinkscales v. Pamlico Correctional Facility Medical Dep't*, 238 F.3d 411, 2000 WL 1726592 (4th Cir.2000)(unpublished).

at 303, 111 S.Ct. 2321. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id.* at 844, 114 S.Ct. 1970. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990); *Norris v. Detrick,* 918 F.Supp. 977, 984 (N.D.W.Va. 1996), *aff'd,* 108 F.3d 1373 (4th Cir.1997).

■ Plaintiff initially sought medical treatment after he was released from the "stokes basket" the first time. The medical records of January 19, 1995, reveal that Plaintiff had a very small bruise at the "Rt. inner wrist at base of thumb" and that "(L) palm side of hand at base of thumb shows no marks or bruises @ this time." The next day, January 20, 1995, Plaintiff was examined by Dr. Wood. Dr. Wood's note of the same date indicates that Plaintiff is very uncooperative and belligerent and that there was no evidence of trauma. Nonetheless, Dr. Wood placed Plaintiff on Indocin, a pain medication, twice a day for 15 days.

Contrary to Plaintiff's assertions, Dr. Wood did not render a diagnosis of Plaintiff's medical condition and the medical records reveal no evidence of trauma, clearly contradicting Plaintiff's allegations that he had a serious medical condition as a result of being placed in the "stokes basket" the first time. Further, Plaintiff's complaints that the pain felt like a "shock of electricity" and a burning sensation like "holding a hand on a flame of fire" does not demonstrate a serious medical condition. Lastly, while Dr. Wood did prescribe pain medication twice a day, the mere fact that pain medication was being used does not render Plaintiff's condition serious. Accordingly, based on the medical records, Plaintiff did not have a serious medical condition at the time of his placement in the "stokes basket" on January 27, 1995.

While Plaintiff asserts that the January 27, 1995 incident with the handcuffs aggravated his wrist condition and caused a new injury to his left wrist and arm, the 8:30 a.m. note from January 28, 1995, reveals Plaintiff was released from the "stokes basket" without any complaints, and that he denied any problems. Further, he did not send in a sick call slip to see Dr. Wood until almost two weeks later on February 3, 1995.

Additionally, there in nothing in the record which substantiates Plaintiff's complaints of pain. Plaintiff's March 10, 1995 x-rays were negative. Further, the doctors made no independent findings of pain and did not determine the validity of Plaintiff's pain complaints. Instead, the references to pain in the medical notes are based on Plaintiff's own statements. Plaintiff's unsubstantiated complaints of pain do not support finding that he sustained a serious medical condition as a result of being placed in the "stokes basket." Moreover, Plaintiff did not receive a diagnosis until March 31, 1995, when the physician at Mount Olive Correctional Complex diagnosed a "contusion of nerve." Even with a diagnosis of Plaintiff's condi-

tion, the only treatment recommended by the physician at the Mount Olive Correctional Complex was continued pain medication and the use of an exercise ball. Significantly, based on the medical records that Plaintiff provided, Plaintiff's pain had improved and there was no mention of pain in his wrist, hands or arms after April 17, 1995. Consequently, upon reviewing the record as a whole, Plaintiff did not suffer from a serious medical condition as a result of being placed in the "stokes basket" on January 17, 1995 and January 27, 1995.

■ Even if Plaintiff's condition were serious, he has failed to demonstrate that Defendants Milbert, Glasscock, Fry and Kestner were deliberately indifferent to his serious medical condition. Plaintiff asserts that Defendants Milbert, Glasscock and Fry heard his complaints of pain but did nothing. However, the evidence reveals that while Plaintiff was in the "stokes basket" he was checked on by the defendants and Plaintiff made no complaints. Also, after Defendant Milbert ordered Plaintiff to be placed in the "stokes basket," he loosened one of the handcuffs after he was advised that the handcuff was too tight. Additionally, Defendants Milbert, Glasscock and Fry could rely on the opinions of the medical personnel to determine whether Plaintiff should be released from the "stokes basket" or needed medical attentions. The medical personnel on duty with Defendants Milbert, Glasscock and Fry made no mention of Plaintiff being in pain or recommended that Plaintiff be released from the "stokes basket" for medical reasons. Thus, there is absolutely no evidence that Defendants Milbert, Glasscock and Fry were deliberately indifferent to Plaintiff's medical needs.

Plaintiff also alleges that Defendant Kestner violated his constitutional rights because she knew Plaintiff had injured his hands and wrists, knew he was on medi-

cine and did not check him during her shift and he did not receive his 9:00 p.m. medicines. Defendant Kestner argues that she believed that the Plaintiff's handcuffs were not too tight, and there was no signs of trauma, "there was no problem concerning the handcuffs or the Plaintiff's wrists" and his wrists did not require any medical treatment.

Additionally, the Medication Charting Record reveals Defendant Kestner checked on Plaintiff numerous times during her shift and noted that it appeared Plaintiff was pulling on his handcuffs. The record also reveals that Plaintiff made no complaints during her shift. The record also reveals that she monitored Plaintiff throughout the night and early morning and noted that Plaintiff had no complaints. Further, the record reveals Defendant Kestner offered Plaintiff pain medication which he refused. Even if Plaintiff's allegations are true, and Defendant Kestner did not offer him his 9:00 p.m. pain medication, such does not constitute deliberate indifference because the medical records do not reveal any outward signs of trauma or pain. Further, Defendant Kestner's failure to inform others of Plaintiff's injuries was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miltier,* 896 F.2d at 851–52. And, based on Plaintiff's complaint, numerous individuals knew of his alleged injuries. Accordingly, there is no evidence whatsoever Defendant Kestner was deliberately indifferent to Plaintiff's medical needs.

■ Lastly, Plaintiff asserts that he told Defendants Milbert, Glasscock and Fry that the nutra-loaf made him sick but they did nothing. From a medical standpoint, the alleged adverse effects from eating nutra-loaf: vomiting, frequent bowel movements and burning in the chest and throat

are not serious medical conditions. Therefore, Defendants Milbert, Glasscock and Fry were not deliberately indifferent to Plaintiff's medical needs when they failed to acknowledge Plaintiff's complaints that the nutra-loaf was making him sick. Further, Defendants Milbert, Glasscock and Fry were able to rely upon the opinions of medical personnel as to whether the nutra-loaf should have been discontinued. There is no evidence that they were advised by any medical personnel to cease serving Plaintiff "nutra-loaf." Further, the medical notes reveal Plaintiff made absolutely no mention regarding stomach problems as a result of eating nutra-loaf when he was in the "stokes basket."

Consequently, the record does not reveal that Defendants Milbert, Glasscock, Fry and Kestner violated Plaintiff's Eighth Amendment rights.

Accordingly it is

**ORDERED** that the Motions for Summary Judgment filed by Defendants Milbert, Glasscock, and Fry on June 9, 2003, and Defendant Kestner on June 11, 2003, are **GRANTED** and Defendants Myers, Glasscock, Fry and Kestner are hereby **DISMISSED** from the above-styled action. It is further

**ORDERED** that Plaintiff's March 27, 2003 Motion for an Expert Witness is **DENIED**. It is further

**ORDERED** that if Plaintiff desires to appeal the decision of this Court, written notice of appeal must be received by the Clerk of Court within **thirty (30) days** from the date of the entry of the Judgment Order, pursuant to Rule 4, Federal Rules of Appellate Procedure. The $5.00 filing fee for the notice of appeal and the $100.00 docketing fee should also be submitted with the notice of appeal. In the alternative, at the time the notice of appeal is submitted, Plaintiff may, in accordance with the provisions of Rule 24(a), Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit. It is further

**ORDERED** that the Clerk of Court send the *pro se* plaintiff and all counsel of record a copy of this ORDER.